UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AIR CRASH NEAR CLARENCE CENTER, NEW YORK, ON FEBRUARY 12, 2009, | **DECISION AND ORDER**<br>09-md-2085<br><br>This document relates to:<br>09-CV-488S |
| PAUL BEITER and MICHELE BEITER, *in their individual capacities, and as Parents and Natural Guardians of Erin Beiter, Tessa Beiter, and Ella Beiter*,<br><br>                        Plaintiffs,<br><br>    v.<br><br>COLGAN AIR, INC., BOMBARDIER, INC., PINNACLE AIRLINES CORP., and CONTINENTAL AIRLINES, INC.,<br><br>                        Defendants. | |

## I.  INTRODUCTION

Presently before this Court is Defendants' Motion for Partial Summary Judgment relating to Plaintiffs' claims for infliction of emotional distress. (Docket No. 112.[1]) Plaintiffs owned and occupied the house directly across the street from where Continental Connection Flight 3407 crashed on February 19, 2009, in Clarence Center, N.Y.  The crash killed all 49 people on board the aircraft and one person in the house and damaged neighboring property.  For the reasons explained below, Defendants' motion is granted.

---

[1] All docket numbers refer to 09-CV-488S.

## II.  BACKGROUND

By order entered October 6, 2009, the United States Judicial Panel on Multidistrict Litigation transferred all then-pending actions concerning the crash of Flight 3407 to this Court for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407. In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 655 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009).  Subsequently-filed actions have also been transferred here.

Plaintiffs in this individual action bring suit on behalf of themselves and their minor children, asserting claims for negligence, *res ipsa loquitur*, strict liability, injury to property, trespass, nuisance, and infliction of emotional distress, based on the crash of Flight 3407. (Amended Complaint, Docket No. 20.)  At issue here are Plaintiffs' claims for infliction of emotional distress.

Plaintiffs lived directly across the street from the site of the aircrash, which destroyed the Wielinski family home at 6038 Long Street, in Clarence Center, N.Y. (Defendants' Rule 56.1 Statement of Undisputed Facts ("Defendants' Statement"), Docket No. 112-6, ¶ 3.[2])  At the time of the crash, Paul Beiter was in the kitchen of his home, Michelle Beiter was in the living room, and the three children were in their beds on the second floor.  (Defendants' Statement, ¶ 4.)  Paul Beiter maintains that he saw Flight 3407 crash into the Wielinski home, and both Paul and Michelle heard and felt the impact of the crash.  (Plaintiffs' Rule 56.1 Statement ("Plaintiffs' Statement"), Docket No. 123-13, ¶ 5;

---

[2] The parties' Rule 56.1 Statements contain citations to the record evidence in this case.  This Court has confirmed and is satisfied that the evidence cited supports the assertions therein.  Cf. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) (holding that factual allegations contained in a Rule 56.1 Statement that find no support in the record evidence must be disregarded and the record reviewed independently).  Consequently, this Court cites to the parties' Rule 56.1 Statements.

Defendants' Statement, ¶ 5.)

Plaintiffs maintain that they "feared for their lives and the lives of their [children]." (Plaintiffs' Statement, ¶ 6.) Along with alleging that their property was damaged and their house was in need of repair, they also maintain that toxic fumes from the crash and resulting fires filled the air and penetrated their home. (Plaintiffs' Statement, ¶¶ 6, 7.) Their property and home required professional remediation and cleaning. (Plaintiffs' Statement, ¶¶ 7, 8.) Plaintiffs vacated their home for three weeks following the crash, but they returned and continue to live there today. (Defendants' Statement, ¶ 8.)

### III. DISCUSSION AND ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.

1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment.  Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party.  Anderson, 477 U.S. at 252.

**B.     Defendants' Motion for Partial Summary Judgment**

Defendants seek summary judgment on Plaintiffs' claims for infliction of emotional distress, because under New York law, recovery of damages for purely emotional injuries is prohibited, except for in limited circumstances.  Plaintiffs maintain that Defendants' motion is misplaced because Plaintiffs suffered physical as well as emotional injuries.  Alternatively, they argue that they are entitled to recover damages even in the absence of physical injury because the facts here fall within the circumstances for which recovery for purely emotional injuries is permitted.

**C.     Physical Injury**

Defendants' motion is premised on there being no claim or evidence that Plaintiffs

suffered physical injury. Plaintiffs' amended complaint does not allege any specific physical injuries sustained as a result of crash Flight 3407. Instead, it includes general references to Defendants causing Plaintiffs "physical, emotional, and property injuries." (See, e.g., Amended Complaint, ¶¶ 24, 25, 26, 34, 115.)

Plaintiffs did not disclose any specific physical injuries in their discovery responses either. In response to Defendants' request for all documents evidencing damages of "medical and hospital costs and expenses" or "personal injuries (physical or mental)," Plaintiffs responded only that they "continue to seek medical treatment for psychological injuries." (Harrington Affidavit, Exhibit D, Docket No. 112-5, p. 7.) Similarly, in response to Defendants' interrogatory requesting that each plaintiff describe their physical and mental/emotional condition, Plaintiffs disclosed their primary doctors and post-accident psychological treatment. (Harrington Affidavit, Exhibit C, Docket No. 112-4, p. 8.) The only reference to possible physical injuries is Plaintiffs' general statement that they "sustained severe physical, mental and emotional damage." (Id. p. 16.)

It was not until their response to Defendants' instant motion that Plaintiffs submitted affidavits from the adult plaintiffs indicating that they suffered "physical complaints" or "physical symptoms." (Affidavit of Paul Beiter, Docket No. 123-10, ¶¶ 34, 37; Affidavit of Michele Beiter, Docket No. 123-7, ¶¶ 29, 31.) Both Paul and Michele Beiter claim that they suffered headaches, eye irritation, sore throat, tiredness, sleeplessness, decreased appetite, and overall nausea. (Id.)

Defendants urge this Court to disregard Plaintiffs' affidavits under the principles annunciated in Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969). In Perma Research, the Second Circuit held that a party cannot create an issue of

5

fact sufficient to defeat summary judgment by submitting an affidavit that contradicts his previous deposition testimony. Id.; see also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony"); L.W. Matteson, Inc. v. Sevenson Envtl. Svcs., Inc., No. 10-CV-168S, 2011 WL 5597353, at *5 (W.D.N.Y. Nov. 17, 2011).

Here, however, Plaintiffs have not been deposed, and thus there is no deposition testimony that their affidavits could contradict. Moreover, the affidavits do not actually contradict Plaintiffs' previous interrogatory responses. Although the affidavits contain details that are lacking in the general references to physical injury included in Plaintiffs' discovery responses, they are not contradictory or inconsistent, such that application of the Perma Research principle is warranted: the discovery responses reference physical injuries and the affidavits expound on them. Although Plaintiffs could better have responded to Defendants' discovery requests, this Court finds that application of the Perma Research principles is unwarranted.

Even with the affidavits, however, this Court finds that Plaintiffs have failed to present evidence from which a reasonable jury could find that they were physically injured by the crash of Flight 3407.[3]

First, the ailments Plaintiffs complain of — headaches, eye irritation, sore throat, tiredness, sleeplessness, decreased appetite, and overall nausea — are not "physical

---

[3] No evidence has been submitted that any of the infant plaintiffs suffered physical injuries.

6

injuries" as that term is commonly understood. An "injury" is "the damage or wound of trauma."[4] Stedman's Medical Dictionary 979 (Julie K. Stegman, publ., Lippincott Williams & Wilkins 28th ed. 2006) (1911). There is no contention or evidence that Plaintiffs suffered any trauma or wounds from the aircrash that could constitute a physical injury. In fact, Plaintiffs themselves describe their conditions as "physical complaints," "ailments," and "physical symptoms," and "problems," which fall short of physical injury.[5] (Affidavit of Paul Beiter, ¶¶ 34-38, 44, 50, 52; Affidavit of Michele Beiter, ¶¶ 29-32, 38, 39, 41.)

Second, there is insufficient objective evidence supporting Plaintiffs' assertions that they suffered from these "physical complaints." The only document relied upon is a single medical record from Paul Beiter's primary care physician indicating that he complained of sinus and throat issues eight days after the aircrash; there is no objective evidence submitted in support of Michele Beiter's claims. (Affidavit of Paul Beiter, Exhibit B.) No other medical records support Plaintiffs' claims that they were physically injured, and it appears that Plaintiffs did not seek any medical attention for their physical complaints, aside from Paul Beiter's visit to his doctor, as described above.

Third, even assuming that Plaintiffs presented sufficient evidence of physical injury, they have not presented any evidence of causation. Other than Plaintiffs' subjective "belief" that their complaints were either "associated," "attributed to" or "caused by" the

---

[4]The medical dictionary Defendants rely on similarly defines "injury" as "trauma or damage to some part of the body." Taber's Cyclopedic Medical Dictionary 998 (Clayton L. Thomas, M.D., M.P.H., ed., F.A. Davis Company 18th ed. 1997) (1940).

[5]Although Plaintiffs rely on Battalla v. New York for the proposition that residual physical complaints attendant to emotional trauma constitute physical injury, 176 N.E.2d 729, 729 (N.Y. 1961) (referencing "residual physical manifestations" without description), that was not the holding in that case, which, in any event, involved recovery for emotional injury resulting from defendant's breach of a direct duty owed to the plaintiff, a circumstance not presented here. See Kennedy v. McKesson Co., 448 N.E.2d 1332, 1334 (N.Y. 1983) (describing Battalla).

aircrash, there is no evidence of causation. (Affidavit of Paul Beiter, ¶¶ 51, 52; Affidavit of Michele Beiter, ¶¶ 38, 39, 41.) No objective evidence has been presented that the common, temporary physical complaints alleged by Plaintiffs were caused by the aircrash. Accordingly, there is insufficient evidence from which a reasonable finder of fact could find in Plaintiffs' favor on causation.

Consequently, Plaintiffs have failed to present sufficient evidence from which a reasonable jury could find that they were physically injured by the crash of Flight 3407. Their infliction of emotional distress claims must therefore be analyzed as seeking recovery for purely emotional injury.

### D. Recovery for Pure Emotional Injury Under New York Law

Recovery of damages for infliction of emotional injury is limited in New York to circumstances where (1) a bystander in the "zone of danger" suffers emotional trauma as a result of his observations, or (2) a defendant breaches a direct duty to a plaintiff, which results in emotional injury to the plaintiff. See Tissenbaum v. Aerovias Nacionales De Colombia, S.A., 885 F. Supp. 434, 438 (E.D.N.Y. 1995).

Under the "bystander rule," damages are recoverable "when the plaintiff is threatened with bodily harm as a result of defendant's negligence and the plaintiff suffers emotional injury 'from viewing the death or serious physical injury of a member of his or her immediate family." Id. (citing Bovsun v. Sanperi, 461 N.E.2d 843, 847 (N.Y. 1984)).

In cases involving a direct duty, a plaintiff may recover if he can prove that the defendant breached a specific duty it owed to him, which unreasonably endangered the plaintiff's own physical safety. Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996); id. at 439 (citing Johnson v. Jamaica Hosp., 467 N.E.2d 502, 503 (N.Y. 1984)). "The duty

. . . must be specific to the plaintiff, and not some amorphous, free-floating duty to society." Mortise, 102 F.3d at 696.

### 1. Bystander

Plaintiffs cannot recover for their purely emotional injuries under the "bystander rule" because the undisputed evidence demonstrates that they cannot prove the required elements of such a claim.

First, the undisputed evidence demonstrates that Plaintiffs were not threatened with bodily injury or in the "zone of danger" during the aircrash. Rather, they were safely in their home when Flight 3407 crashed. (Affidavit of Paul Beiter, ¶¶ 4-7, 11, 16; Affidavit of Michele Beiter, ¶¶ 4-6, 11-12, 15.) Plaintiffs suffered no injuries in their house, and aside from being able to smell fumes and feel heat from the explosion from inside their house, Plaintiffs were safe. (Affidavit of Paul Beiter, ¶¶ 12, 13; Michele Beiter, ¶ 14.) Scared, but safe. (Affidavit of Paul Beiter, ¶ 10; Affidavit of Michele Beiter, ¶ 11.) Only the exterior of Plaintiffs' house was damaged. That the Plaintiffs were not in the "zone of danger" is further evidenced by the fact that Karen and Jill Wielinski fled to Plaintiffs home after Flight 3407 crashed into their house, neighbors congregated there, and emergency personnel used it as a "command center." (Affidavit of Paul Beiter, ¶¶ 17-18, 20; Affidavit of Michele Beiter, ¶¶ 15-16.) Accordingly, Plaintiffs were not threatened with bodily harm and were not bystanders in the "zone of danger." See Morley v. Am. Airlines, Inc., 508 F. Supp. 2d 244, 247 (S.D.N.Y. 2007) (noting that under "bystander" theory, a plaintiff must demonstrate that he was threatened with physical harm); Tissenbaum, 885 F. Supp. at 438 (similar); Zea v. Kolb, 204 A.D.2d 1019, 1019 (4th Dept. 1994) (mother not in "zone of danger" when she was 12 to 15 feet away from where her daughter was struck by a car but

9

never threatened with bodily harm due to defendant's negligence).

Second, as noted above, there is insufficient evidence from which a jury could find that any of the plaintiffs suffered a physical injury, let alone a serious physical injury, from the crash of Flight 3407. Thus, Plaintiffs cannot prove that any of them viewed "the death or serious physical injury of a member of his or her immediate family." Bovsun, 461 N.E.2d at 847.

Accordingly, Plaintiffs cannot recover for their emotional distress under the "bystander" theory. See Mortise, 102 F.3d at 696 (rejecting plaintiff's "bystander" claim as "fatally deficient" because plaintiff's "own physical safety was never threatened and she did not see Mr. Mortise suffer a serious physical injury."); Tissenbaum, 885 F. Supp. at 438 (no recovery under "bystander" rule where no member of the plaintiff's immediate family was injured in the accident at issue).

### 2. Direct Duty

Plaintiffs are also barred from recovering for their emotional injuries under a direct duty theory because Defendants did not owe them a direct duty of care. "New York recognizes claims for negligent infliction of emotional distress in instances in which the plaintiff's emotional injury results from 'a breach of duty which 'unreasonably (endangers) the plaintiff's physical safety.''" Tissenbaum, 885 F. Supp. at 438-39 (quoting Wilson v. Consol. Rail Corp., 810 F Supp. 411, 416 (N.D.N.Y. 1993), in turn quoting Green v. Leibowitz, 118 A.D.2d 756 (2d Dept 1986)). As a prerequisite to recovery, Plaintiffs must prove that Defendants owed them a specific duty of care. Id. at 439. This they cannot do.

Three aircrash cases demonstrate that Defendants did not owe Plaintiffs a special duty. Tissenbaum v. Aerovias Nacionales de Columbia involved plaintiffs who were

10

similarly situated to Plaintiffs here.  The Tissenbaums were home the night that Avianca Flight 52 crashed into their deck and backyard.  Neither of them suffered any direct physical injuries from the crash, but their home was used as a command center and their lives were similarly disrupted.  In rejecting the Tissenbaums' claim that passenger airlines owe a direct duty to non-passengers on the ground below an airplane's flight path, the court found that non-passengers "are not in the kind of implied contractual relationship required to recover for negligently inflicted emotional distress . . . . [i]t is the passengers on the airplane who share the type of relationship necessary to recover emotional damages, not the people on the ground who had the unfortunate experience of being in the wrong place at the wrong time."  Tissenbaum, 885 F. Supp. at 439.

In Hassanein v Avianca Airlines, another case arising out of the crash of Avianca Flight 52, the plaintiff sought recovery for emotional damages that she incurred as a result of participating in the rescue efforts after the crash.  872 F. Supp. 1183, 1185 (E.D.N.Y. 1995). The plaintiff lived 50 to 100 yards from the crash site and left her home to go to the scene after hearing screams and babies crying.  The plaintiff was not physically injured but she suffered emotional injuries.   Noting that New York courts "have held strong reservations against compensating plaintiffs who claim purely emotional injuries as a result of witnessing injuries to others," the court found that in the absence of physical injuries caused by the aircrash, the plaintiff could not recover for her emotional injuries. Hassanein, 872 F. Supp. at 1188 (citing Tobin v. Grossman, 249 N.E.2d 419 (N.Y. 1969)).

More recently, in Morley v. Am. Airlines, Inc., the court relied on Tissenbaum and Hassanein in rejecting the plaintiff's claim for emotional damages.  Morley involved the crash of American Airlines Flight 587 in Belle Harbor, N.Y., in which 265 people were killed.

The 3-year-old plaintiff, Michael Morley, Jr., was at home with his grandmother when they heard a loud explosion and their house caught fire. Morley and his grandmother fled to the street, where they watched the house burn down. Morley was not physically injured, but he suffered post-traumatic nightmares and fears related to the fire and underwent 14 months of psychotherapy. Relying on Tissenbaum and Hassanein, the Morley court rejected the plaintiff's contention that the airline owed him a direct duty. 508 F. Supp. 2d at 248-49.

Morley also rejected one of the arguments that Plaintiffs advance here — that the decision in In re: September 11 Litigation provides a basis for finding that airlines owe non-passengers a specific duty. 280 F. Supp. 2d 279 (S.D.N.Y. 2003). In that case, the court found that the airline and security screening company defendants owed a duty to those plaintiffs who were physically injured on the ground. See In Re: Sept. 11 Litig, 280 F. Supp. 2d at 295. The Morley court specifically noted that In Re: September 11 Litigation did not address whether airlines owe a duty to non-passengers who are not physically injured but who suffer emotional distress. The existence of that duty is addressed — and rejected — in Tissenbaum and Hassanein. The court therefore dismissed the plaintiff's claim for negligent infliction of emotional distress for lack of direct duty. Morley, 508 F. Supp. at 249. And further, even assuming the validity of the duty described in In re: September 11 Litigation, it is triggered only when the non-passenger suffers a physical injury, which, as described above, there is insufficient evidence of in this case. Id. at 248 ("That Judge Hellerstein cited both Tissenbaum and Hassanein with approval in the September 11 case further supports the notion that he did not intend to extend air carriers' duties to even those non-passengers who suffered no physical injuries.").

Plaintiffs also argue that New York General Business Law ("NY GBL") §§ 245 and 251 establish that Defendants owed them a duty. NY GBL § 245 sets air traffic rules that govern the operation and use of aircraft in New York. Section 245 (1) prohibits the operation of aircraft "in a careless or reckless manner so as to endanger the life or property of others." Other provisions govern minimum safe altitudes, acrobatic flying, dropping objects, water operations, and the like. See NY GBL § 245 (2)-(11). Section 251 governs the liability of aircraft owners and makes them liable and responsible for death or injuries to person or property sustained in or above New York due to the use or operation of the aircraft in any case where the user or operator of the aircraft would be liable for such death or injuries. This provision is "intended to ensure that victims of private, general aviation aircraft accidents have recourse to a financially responsible defendant — the owner of the aircraft — when a non-owner pilot crashes the aircraft." See N. Am. Airlines, Inc. v. Virgin Atl. Airways, Ltd., No. 05-CV-150(JG), 2006 WL 3782862, at *6 (E.D.N.Y. Dec. 22, 2006).

Contrary to Plaintiffs' argument, neither of these statutes impose a direct duty owed by Defendants to Plaintiffs. The law is clear that to recover for purely emotional injuries, Plaintiffs must prove that the Defendants breached a *specific* duty owed to them: "[t]he duty . . . must be specific to the plaintiff, and not some amorphous, free-floating duty to society." Mortise, 102 F.3d at 696. NY GBL §§ 245 and 251 do not impose duties specific to Plaintiffs.

### IV. CONCLUSION

For the reasons stated above, this Court finds that Defendants are entitled to summary judgment on Plaintiffs' infliction of emotional distress claims because Plaintiffs

have not come forward with sufficient evidence of physical injury and because the circumstances of this case do not fall into either of the two categories under New York law that would permit recovery for purely emotional injuries. Defendants' motion will therefore be granted.

## V. ORDER

IT HEREBY IS ORDERED, that Defendants' Motion for Partial Summary Judgment on Plaintiffs' Infliction of Emotional Distress claims (Docket No. 112) is GRANTED.

SO ORDERED.


Dated: March 25, 2012
       Buffalo, New York


                                        /s/William M. Skretny
                                     WILLIAM M. SKRETNY
                                            Chief Judge
                                   United States District Court